IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

No. CR-S-05-00380

        vs.

ORDER

RALPH E. GADDIS,

        Defendant.
        _____/

*Introduction and Summary*

Defendant, Ralph E. Gaddis, moves to suppress all evidence and statements in this criminal action which charges Gaddis with possession of a firearm in a federal facility in violation of 18 U.S.C. § 930(a), possession of a dangerous weapon (switchblade) on a federal facility (same code section), no proof of insurance in violation of California Vehicle Code § 16028(a) (infraction) and finally, the infraction of driving with a defective windshield in violation of California Vehicle Code § 26710.

For the reasons that follow, even taking the government's version of the facts regarding the stop at their face value, the search of defendant's truck, undertaken without probable cause, violated the Fourth Amendment, and evidence resulting therefrom must be suppressed; the § 930(a) charges must be dismissed. The parties will inform the court whether they desire to

1

proceed on the Vehicle Code infractions.[1]

*Facts*

The parties disagree strongly on certain facts leading up to the stop of Gaddis. Ordinarily, an evidentiary hearing would have to be held to sort them out. However, in this case, even if the court found correct the government's version of the "stop" facts, the undisputed facts after the stopping of defendant's truck, i.e., the uninvited, unconsented to, and warrantless search of the truck, preclude the evidence regarding the weapons from being used. Thus, the court will recount the facts from the government's viewpoint, noting for informational purposes only on occasion, the defendant's dispute with those facts.

On July 22, 2005, Gaddis took his commercial truck to the San Joaquin Defense Depot ("Depot") in order to pick up a load. Military police at Gate 4 directed Gaddis to the trucking control center, apparently, just inside the base gate. Some type of logistical problem ensued which resulted in Gaddis not being able to acquire the necessary shipping pass, which meant that Gaddis could not pick up his load. Gaddis proceeded with an issued "bobtail" pass (empty load pass) to exit Gate 4 with the intent to call his employer from outside the base. (The facts are silent as to why the call was not made at the trucking control center). Two military police officers witnessed Gaddis exit from Gate 4 without having stopped his truck (as required) and without having shown his pass to the gate guards.[2] The government is silent as to what Gaddis did immediately upon exiting the gate (Gaddis relates that he stopped his truck to call his employer), but at some point the gate guards radioed for a patrol officer (Aguirre) to contact the truck. According to the government, when told of the incident, "[b]ased on past experience, Officer Aguirre concluded that a truck with an attached trailer and failing to stop at the gate could

---

[1] The undersigned has determined to decide this matter without oral argument, and on the papers submitted by the parties. This determination renders defendant's request for funds to travel moot.

[2] Gaddis contends that the gate guards waved him through.

2

1 have the wrong trucking load or be stealing." Opposition at 3.

2  Aguirre saw Gaddis' truck as it was moving northbound on Chrisman Road, ostensibly still on the base, but outside the gate and fence of the base. After making a U-turn, Aguirre stopped the truck, and had it pull over in a parking lot adjacent to the Depot, but still outside the fence and gate. Evidently, Gaddis exited the truck and was questioned by Aguirre (the government does not relate the substance) until three other military police arrived on the scene. It is undisputed that Gaddis possessed the bobtail pass that Aguirre initially suspicioned that Gaddis did not have. Upon arriving at the scene, one of the officers (Borst) climbed into the truck and conducted a search. The government does not contend that Gaddis consented to the search, nor does the government indicate that any post-stop event or statement triggered the search– Borst simply climbed into the truck uninvited to start a search.

 Borst discovered a switchblade and shotgun shells in the truck. Borst requested the officers on the ground to ask Gaddis whether he had a gun. Prior to receiving any response, Borst found a pistol beneath the mattress, and he found the shotgun as well. Concurrently with the discovery of the weapons, Gaddis informed Aguirre that a pistol lay beneath his mattress. Gaddis was cited for the aforementioned violations and released. Gaddis was not cited for running the exit point at Gate 4.

 Signs on the fence near where Gaddis was detained, and proximate to the entry point of Gate 4, indicated that anyone entering the base was subject to search. However, these signs specifically indicated that "a condition of *entry*" to the base was submission to search. While the government contends that Chrisman Rd, at least to the middle of the road, is part of the military facility, an uninformed, reasonable person would suspect otherwise as the fence and gate area would reasonably be seen to guard "entry" to the base.

*Discussion*

 The court will dispense with discussion about whether the stop of Gaddis was appropriate. Clearly, a military base is authorized to have entry and exit points at which motorists

3

must stop. United States v. Hawkins, 249 F.3d 867, 874-876 (9th Cir. 2001). And, it would be obtuse to argue that persons who "run" the gate may do so with impunity. Suffice it to say that military officials may follow and stop persons who run the gate–assuming that criminal laws do forbid running the gate– a point that neither the government nor Gaddis pursues. Thus, the outcome of the *stop* will not depend on whether Gaddis was on military property or not.

The search issue is another matter. The undersigned has held that persons within a military facility can be searched without probable cause, United States v. Turner, CR-S-96-0330 GGH, relying upon United States v. Miles, 480 F.2d 1217,1219 (9th Cir. 1973). Miles did not rely upon consent, but rather that court termed the search an administrative search. Some of the discussion in Turner and Miles is worth repeating here:

> In United States v. Nix, CR-S-96-0176, the court, relying on United States v. Jenkins, 986 F.2d 76 (4th Cir. 1993), held that military police could search a vehicle on base without probable cause or a warrant without violating Fourth Amendment safeguards. The court reasoned that the concerns of national security, coupled with the lesser expectation of privacy that one would have on a military base, led to the conclusion that a person was deemed to have consented to search upon entering a military base--at least with respect to "ordinary" vehicle searches. The court further relied upon Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979), for the proposition that the need for probable cause and/or a warrant for governmental searches depended upon the nature of the place to be searched among other factors, i.e., a warrantless search conducted without probable cause could be a reasonable search under the Fourth Amendment depending on the circumstances.
> The Ninth Circuit long ago held in United States v. Miles, 480 F.2d 1217 (9th Cir, 1973), that searches of vehicles entering a portion of a military base could be performed without probable cause and without a warrant. In Miles (a case arising in the Eastern District of California), military police at the Sierra Army Depot performed a search of a truck pursuant to Army policy that required that all vehicles entering specified areas on the base be searched. During the course of the search, the military police discovered an unregistered firearm, and the truck driver's helper was subsequently convicted of a possession of an unregistered firearm (26 U.S.C. § 5861(d)). Although there was an issue of whether the truck driver had consented to search, the Ninth Circuit did not rely upon consent as justification for the search. Terming the search an "administrative search," the Ninth Circuit continued:
>
>> It was held [in cases the Ninth Circuit had cited] that the public interest in preventing the introduction of dangerous material into the particular area involved was sufficiently strong to make it reasonable for the government (without a warrant or traditional probable cause) to condition access by any person seeking to enter

4

> the area upon submission by that person to an administrative inspection no more intrusive than necessary to meet the need to exclude the dangerous material from the restricted area.
>
> \*\*\*
>
> Obviously there was a strong public interest in excluding weapons or sabotage devices from the ammunition dump. It was entirely reasonable to condition entry of a commercial vehicle into this area upon submission of the vehicle and its contents to an inspection sufficient to assure that no such material was present. It is clear from the record that Trevillian [the driver] was fully aware of this condition upon entry and willingly agreed to satisfy it [i.e., by presenting his truck at the specified area].

United States v. Miles, 480 F.2d at 1219.

Relying upon Miles and Jenkins, this court has no hesitancy in confirming its conclusion in Nix that a military base may order warrantless searches without probable cause for vehicles which enter its compound for the administrative purpose of searching for unlawful materials or other contraband prohibited by the base policies. In this case involving McClellan AFB, the entire military base was the restricted area in which persons were notified by signage that they could be searched without probable cause, i.e., the vehicle driver was deemed to have given his consent to search by entry onto the base. The court views the "deemed consent" as the equivalent to a policy that searches may be conducted without a warrant or probable cause. This court will not engage in a second guessing of military officials who have determined that the entire base was a restricted area as opposed to certain portions of that base. In today's environment of terrorist tragedies, the military is entitled to search any vehicle which seeks to enter the base for unlawful contraband such as weapons, explosives, or illegal drugs. United States v. Turner, supra.

However, the critical factor in Turner and Miles absent here, is that the person whose vehicle was to be searched, knew of his deemed consent when entering into the base because of the signage which told him so. At this point, the person had the ability to determine not to enter the area, Miles, supra, in order to avoid the search. Gaddis had already exited the base, as any ordinary person would understand its location– any deemed consent would have evaporated at this time.[3]

---

[3] The exact location of the restricted areas of the base in Turner were not at issue. Turner had been stopped at the gate, and was told to enter the restricted area prior to the search at issue. As such, Turner was clearly within the restricted areas. The search was held invalid in Turner because Turner was not permitted to leave the base despite his request to do so even before he had crossed the gate threshold.

5

The government's problematic proffer, that the base property line ran into the middle of the public thoroughfare, does not suffice to place this Gaddis case within the boundaries of Miles. The point of Miles was that the person approaching the restricted area would know that he had the option of not entering it because of the sign, and hence could avoid a search. Like *Dante's Inferno* in which one did not actually enter hell until passing the sign,[4] one cannot logically view the actual military *restricted* area as being located prior to the sign advising all that entry *therein* will subject them to search. If the situation were otherwise, persons could be searched before they knew of their right to exercise the option not to enter. And, this court will not hold that the deemed consent to search will linger past the time one is actually within the restricted area, as is the case here. No authority would support such an expansion of Miles.

Thus, the government would have to either have probable cause to search or would have to qualify for an exception other than "deemed consent." The government does not argue any exception. That is, the government does not claim that Gaddis' search was incident to arrest; indeed, Gaddis was not even cited for running the gate. An inventory search exception is not applicable. No facts suggest that Gaddis gave express consent prior to the search and query of Officer Borst. Moreover, the purpose for any investigatory stop expired when Aguirre must have ascertained that Gaddis did indeed possess a bobtail pass. Even if the place of Gaddis' stop was considered to be part of the "checkpoint" stop area, see Michigan Dept. Of State Police v. Sitz, 496 U.S. 444 (1990), Gaddis did or said nothing which would warrant a further investigatory intrusion. See id. at 448-451, requiring some probative fact aside from the stop itself to justify a further intrusion. Again, the possession of a valid bobtail pass by Gaddis would be all the officers on the scene would need to resolve the "running the gate" issue. The government does not argue that it had probable cause to generally search the truck. The government merely argues that Officer Aguirre, who before the stop was unaware of Gaddis' possession of a bobtail pass, "[b]ased on past

---

[4] All hope abandon ye who enter here.

experience," believed that the truck driver (Gaddis) "could have the wrong trucking load or be stealing." Even if this qualifies as a reasonable suspicion, it does not qualify as probable cause. United States v. Collins, 427 F.3d 688, 691 (9th Cir. 2005) (" While this knowledge may have created reasonable suspicion, it did not rise to the level of probable cause.")

*Conclusion*

Accordingly, the evidence of the pistol and the knife must be suppressed. Without this evidence, the government cannot proceed on the §930(a) charges, and the undersigned orders those charges dismissed. The parties shall inform the court no later than December 1, 2005 whether they desire to proceed herein with the infraction charges. See Fed.R.Crim.P. 58 (c)(2).

IT IS SO ORDERED

DATED:   November 17, 2005

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE